# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RAYMOND HALWIX, | Case No. 2:17-cv-02263-APG-CWH |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

This matter was referred to the undersigned magistrate judge for a report of findings and recommendations under 28 U.S.C. § 636(b)(1)(B)-(C) and Local Rule IB 1-4. The case involves review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Raymond Halwix's ("Plaintiff") application for disability insurance benefits under Titles II and XVI of the Social Security Act. The court has reviewed Plaintiff's motion to remand (ECF No. 17), filed February 20, 2018, the Commissioner's response and cross-motion to affirm (ECF Nos. 20, 21), filed March 29, 2018, and Plaintiff's reply (ECF No. 22) filed April 12, 2018.

Plaintiff filed a notice of the death of Raymond Halwix on December 15, 2018. (ECF Nos. 23, 25). The Commissioner responded (ECF No. 26) on December 21, 2018, and Plaintiff replied (ECF No. 28, 29) with evidence that Robert William Halwix, Plaintiff's adult surviving child, is the real-party-in-interest. Plaintiff's Title II claims may be awarded to the deceased individual's survivors. *See* 20 C.F.R. 404.503(b)(1)-(7). However, Plaintiff's Title XVI claims do not survive death because Plaintiff had no surviving spouse. *See Smith v. Califano*, 597 F. 2d 152, 155-157 (9th Cir. 1979).

## I.   BACKGROUND

### 1.   Procedural History

In April 2012, Plaintiff applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, alleging an onset date of November 9, 2011. AR[1] 280-88 and 289-98. Plaintiff's claim was denied initially, and on reconsideration. AR 166-69, 173-75, 176-78. A hearing was held before an Administrative Law Judge ("ALJ") on November 7, 2013 and December 10, 2015. AR 63-94, 32-54. On June 26, 2017, the ALJ issued a decision finding Plaintiff was not disabled. AR 13-31. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review. AR 1-5. Plaintiff, on August 25, 2017, commenced this action for judicial review under 42 U.S.C. §§ 405(g). (*See* Compl. (ECF No. 1).)

### 2.   The ALJ Decision

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. AR 17-18. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of November 9, 2011. AR 18. At step two, the ALJ found that Plaintiff had medically determinable "severe" impairments of coronary artery disease with stent placement in 2006; degenerative disc disease of the lumbar spine; cellulitis; and diplopia (double vision). AR 18. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18. At step four, the ALJ found that Plaintiff has the residual functional capacity to perform the demands of lifting and carrying 50 pounds occasionally and 25 pounds frequently; standing and walking for six hours in an eight-hour day; occasional postural activities; no work at heights or around dangerous machinery; and no work requiring binocular vision or depth perception. AR 18. The ALJ found that Plaintiff is unable to perform her past relevant work as a store laborer, casino porter, and kitchen helper. AR 22. The ALJ classified plaintiff as a closely approaching advanced age on the alleged onset date. AR 23. Plaintiff possesses a general equivalency diploma and the ability to communicate in

---

[1] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 13).)

English. *Id.* Transferability of job skills is not material to the determination of disability. *Id.* Considering the claimant's age, education, work experience, and the residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. *Id.* Accordingly, the ALJ concluded that Plaintiff was not under a disability at any time from November 9, 2011, through the date of the decision. AR 24.

## II.     DISCUSSION

### 1.     Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides.

42 U.S.C. § 405(g). The court may enter "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner de novo. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole,

weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are insufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based . . . ." *Id.* (citing *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975)).

### 2. Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See generally* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. *See Barnhart*, 540 U.S. at 24. If the individual is not engaged in SGA, then the analysis proceeds to the step two. *See id.* Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); SSR 85-28, 1985 WL 56856 (Jan. 1, 1985).[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); see also 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *Bray*, 554 F.3d at 1223-24 (finding ALJ erred in disregarding SSR 82-41).

the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); see also SSR 96-8p, 1996 WL 374184 (July 2, 1996). In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). *See* 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. *See* 20 C.F.R. §§ 404.1560(b), 404.1565(a). In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. *Id.* §§ 404.1560(b), 404.1565(a). If the individual has the RFC to perform her past work, then a finding of not disabled is made. *Id.* § 404.1560(b)(3). If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. §

404.1520(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

**3.    Analysis**

**a.    Dr. Houchin's opinion**

Plaintiff moves to remand this matter because the ALJ failed to articulate clear and convincing reasons for rejecting the opinions of treating physician Dr. Houchin, who opined that Plaintiff would be subject to easy eye fatigue, would need to rest his eyes frequently, would have difficulty with seeing large objects and focusing clearly on small objects, and would suffer frequent double vision. The government responds that the ALJ properly assessed Plaintiff's RFC in light of the opinions of Dr. Houchin.

The ALJ is responsible for establishing a claimant's RFC based on medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545-404.1546,1 20 C.F.R. §§ 416.945-416.946. Congress directs that, "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require," 42 U.S.C. § 423(d)(5)(A), and that the Commissioner's findings must be upheld if supported by substantial evidence, 42 U.S.C. § 405(g).

An ALJ need not accept the opinion of any physician, even a treating physician, if it is brief, conclusory, and inadequately supported by clinical evidence. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The more a medical source presents medical signs to support his opinion, or the more consistent his opinion is with the overall record, the more the ALJ can give weight to that opinion. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."); 20 C.F.R. § 404.1527(c)(4) ("Generally,

the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

An examining physician's opinion constitutes substantial evidence because it rests on his own independent examination of Plaintiff, and it may serve as substantial evidence supporting the ALJ's finding as to a claimant's impairment and limitations. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Furthermore, opinions of non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Thomas*, 278 F.3d at 957. An ALJ may rely on a non-examining physician's opinion to determine a claimant's limitations. *Bray v. Astrue*, 554 F.3d 1219, 1221-22 (9th Cir. 2009); *see also* 20 C.F.R. § 404.1527(e)(2)(i) (State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation; administrative law judges must consider their findings and opinions as opinion evidence, except for the ultimate determination about whether one is disabled). Moreover, an ALJ may reject another physician's opinion based on an examining physician's or non-examining physician's opinion. *Tonapetyan*, 242 F.3d at 1149.

The ALJ summarized the evidence related to Plaintiff's vision, and specifically and extensively discussed Dr. Houchin's opinions and findings. AR 20-21. Dr. Houchin began to treat Plaintiff in January 2012, and advised him to quit his job for health reasons. He advised in monthly visits that Plaintiff's diplopia resolved by covering either eye, and recommended prisms. In attempting to fit Plaintiff for prisms, Dr. Houchin later opined that the highly variable measurements for Plaintiff either suggested profound brain eye movement control center instability or malingering, and once again advised Plaintiff to use an eye patch. *Id.*

Later in 2012, state agency reviewing medical consultant Dr. Wheeler reviewed the record evidence and noted that covering one eye resolved the diplopia but also affected binoclular vision and depth perception, that it was uncertain prisms would help, and recommended an RFC limiting environmental hazards, driving, exposure to heights, and precluding depth perception. *Id.*

On March 21, 2013, Plaintiff saw Dr. Nelson for an ophthalmologic evaluation. She reported that Plaintiff had 20/20 with correction, and no signs of cranial nerve palsies or any other neurologic injury and she was unaware of any organic pathology that would result in the exam results. Dr. Nelson instructed Plaintiff to do convergence exercises fifteen times per day and smoking cessation, and recommended Plaintiff continue alternate patching and advised him that it was legally permissible for him to drive with one eye covered but that he should exercise extra caution. AR 21.

On October 18, 2013, Dr. Houchin submitted a Visual Limitations – Residual Functional Capacity Questionnaire and noted that the claimant had best corrected vision of 20/30 in both eyes. *Id.* Dr. Houchin opined that the claimant had limited depth perception and accommodation, but no limitations in near or far acuity, color vision, or field of vision; he added that Plaintiff reported intermittent double vision with exotropia confirmed on exam. *Id.* Dr. Houchin opined that exotropia may have compromised Plaintiff's depth perception and accommodation. Id. He made similar findings in April 2014 and October 2014.

But in June, 2014, Dr. Houchin reported that Plaintiff's double vision was still unresolved and that Plaintiff could not attend training or perform work of any kind. In conclusion, Dr. Houchin reported that it was reasonable to expect a person with Plaintiff's eye disorder to experience easy eye fatigue and that as a result, Plaintiff would have to rest his eyes frequently. He also said that Plaintiff's double vision was constant and that he would experience diminution of depth perception, difficulty in reading, and could not carry on tasks requiring careful visual attention to detail. *Id.*

Here, the court finds that the ALJ properly explained why he gave only partial weight to Dr. Houchin's opinions, particularly, that the treatment records did not fully support his findings. For example, contrary to Dr. Houchin's questionnaire response that Plaintiff's double vision was constant, Dr. Houchin consistently reported only intermittent double vision. Plaintiff himself characterized the diplopia as "intermittent" and did not report constant double vision. Moreover, the record indicates that Plaintiff experienced some improvement in his vision from patching and prism and that he admitted to not fully following his doctors' instruction to patch his eye. *See* 20

1  C.F.R. § 404.1530(a)-(b) ("In order to get benefits, you must follow treatment prescribed by your
2  medical source(s) if this treatment is expected to restore your ability to work;" "If you do not
3  follow the prescribed treatment without a good reason, we will not find you disabled…").
4  Furthermore, there was no evidence in the record indicating that Plaintiff had to close his eyes to
5  rest them.  AR 21.

6  Because Dr. Houchin's opinions were not consistent with and supported by the record, the
7  ALJ reasonably found that Dr. Houchin's opinions were based "heavily" on Plaintiff's subjective
8  report of symptoms and limitations provided by Plaintiff, and seemed to uncritically accept as
9  true most, if not all, of what the Plaintiff reported.  The ALJ found Plaintiff's allegations not
10 credible based on his admitted non-compliance with prescribed treatment of patching his eye, as
11 well as Dr. Houchin's suspicion that Plaintiff was malingering.  AR 19-22.  It was permissible for
12 the ALJ to give less weight to Dr. Houchin's opinions based on Plaintiff's allegations, including
13 not being able to do work and tasks due to his visual limitations.  *Id.*

14 Finally, the ALJ permissibly gave significant weight to the opinions of State agency
15 medical consultants Mayenne Karelitz, M.D., and Jon Arnow, M.D, indicating that they were
16 "based upon a thorough review of the evidence and familiarity with Social Security Rules and
17 Regulations and legal standards set forth therein and were well-supported by the medical
18 evidence, including the claimant's medical history and clinical and objective signs and findings as
19 well as detailed treatment notes, which provided a reasonable basis for claimant's chronic
20 symptoms and resulting limitations."  AR 20.  *See* 20 C.F.R. § 404.1527(c)(3)-(4); see also 20
21 C.F.R. § 404.1527(e)(2)(i) ("State agency medical and psychological consultants and other
22 program physicians, psychologists, and other medical specialists are highly qualified physicians,
23 psychologists, and other medical specialists who are also experts in Social Security disability
24 evaluation;" therefore, ALJs must consider their findings as opinion evidence, except for the
25 ultimate determination about whether you are disabled); *Thomas*, 278 F.3d at 957 (opinions of
26 non-examining physicians may also serve as substantial evidence when the opinions are
27 consistent with independent clinical findings or other evidence in the record).  On September 21,
28 2012, Dr. Karelitz reviewed the record evidence, including Dr. Wheeler's report, and opined that

1  Plaintiff had to cover one eye for his diplopia, which affected his depth perception, and restricted
2  him from unprotected heights.  On March 3, 2013, Dr. Arnow reviewed the medical evidence and
3  affirmed Dr. Karelitz's opinion, noting that there was no indication that Plaintiff's eye condition
4  had worsened and noting that there were reports, including one on December 15, 2012, suspecting
5  Plaintiff was malingering.  Accordingly, the ALJ articulated clear and convincing reasons for
6  rejecting the opinions of treating physician Dr. Houchin.

### b. Plaintiff's age category

Plaintiff argues that because he turned 55 years of age just 33 days after the date of the ALJ decision, the range of nonexertional impairments eliminates his ability to perform work requiring medium exertion, despite the fact that the ALJ found that Plaintiff could perform the exertional demands of lifting and carrying 50 pounds occasionally and 25 pounds frequently. The Commissioner responds that no borderline age situation affected the outcome of the decision because Plaintiff had the RFC to perform a full range of medium work, with a high school education, unskilled or no past work experience, and advanced age, and so a finding of "not disabled" would have been directed by Medical-Vocational Rule 203.14.

In determining whether a claimant is disabled, the ALJ will usually refer to the Medical Vocational Rules, or "grids."  The grids correlate a claimant's age, education, previous work experience, and residual functional capacity to direct a finding of either disabled or not disabled. The Secretary adopted the grids to improve the efficiency of the application process and to promote uniform decision-making. *Heckler v. Campbell*, 461 U.S. 458, 461 (1983).  The ALJ must apply the grids if a claimant suffers only from an exertional impairment.  20 C.F.R. Part 404.  Where the grids dictate a finding of disability, the claimant is eligible for benefits; where the grids indicate that the claimant is not disabled, benefits may not be awarded.  Where a claimant suffers solely from a nonexertional impairment, the grids do not resolve the disability question, and other testimony is required. *Id.* at § 200.00(e)(1).  Where a claimant suffers from both exertional and nonexertional impairments, the ALJ must use the grids as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." *Id.*

Age means chronological age. 20 C.F.R. § 404.1563(a). The Commissioner uses the age category in 20 C.F.R. § 404.1563 that applies to the period for which the disability determination is made. 20 C.F.R. § 404.1563(b). In addition, the Commissioner "will not apply the age categories mechanically in a borderline situation." If claimant is within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, the Commissioner will consider whether to use the older age category after evaluating the overall impact of all the factors of your case. 20 C.F.R. § 404.1563(b); SSR 83-10.

Here, the ALJ recognized that Plaintiff's ability to perform substantially all of the requirements for medium work was impeded by additional limitations. AR 23-24. To determine the extent to which these nonexertional limitations eroded the unskilled medium occupational based, the ALJ identified additional limitations regarding monocular vision (resulting from patching) and asked the VE about the availability of appropriate jobs. AR 47-51. The VE identified a variety of jobs in the light exertion level, which are within Plaintiff's medium RFC. *Id.* Accordingly, Plaintiff's age did not effect the outcome of the ALJ's determination, and contrary to Plaintiff's arguments, the determination in this case was not directed by the Medical Vocational Rules.

### III.     CONCLUSION AND RECOMMENDATION

Accordingly, IT IS THEREFORE RECOMMENDED that Robert William Halwix, Plaintiff's adult surviving child, be designated as the real-party-in-interest.

IT IS FURTHER RECOMMENDED Plaintiff's motion to remand (ECF No. 17) be denied.

IT IS FURTHER RECOMMENDED that the Commissioner's cross-motion to affirm (ECF Nos. 20, 21) be granted.

### IV.     NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being

1 | served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely
2 | objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d
3 | 1153, 1157 (9th Cir. 1991).

DATED: June 28, 2019

_____
C.W. HOFFMAN, JR.
UNITED STATES MAGISTRATE JUDGE